UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| RONALD BARROWS, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Case No. 1:10-cv-280 ) ) Judge Mattice |
| CITY OF CHATTANOOGA, TENNESSEE, | ) ) |
| *Defendant.* | ) ) |

## **MEMORANDUM & ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 20). The Court has considered Defendant's Motion, Plaintiff's Response, (Doc. 26) and Defendant's Reply (Doc. 28), as well as the accompanying evidence. For the reasons discussed herein, Defendant's Motion for Summary Judgment will be **DENIED IN PART** and **GRANTED IN PART**.

## I.     BACKGROUND

For the purposes of summary judgment, the Court will view the facts in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Ronald Barrows, the Plaintiff in this action, began working for the City of Chattanooga Fire Department ("CFD") in 1985. (Doc. 26-1 at 2). Plaintiff was promoted several times during his tenure at CFD, ultimately to the rank of fire captain.[1] (Doc. 26-1 at 1-2; Doc. 26 at 1; 28-1 at 2-3). In that position, Plaintiff's chain of command was, respectively, the battalion chief, the operations chief, and the fire department chief, with

---

[1] Plaintiff retired earlier this year after working for CFD for 27 years. (*See* Doc. 26-1 at 1-2; Doc. 28-1 at 3).

lieutenants ranking below captains. (Doc. 20-1 at 2). CFD employees only 9 battalion chiefs, as compared to 87 fire captains and 89 lieutenants. (Doc. 22 at 1). Each battalion chief is responsible for a particular district, which consists of six fire stations. (Doc. 20-1 at 3). In turn, each fire captain is responsible for overseeing a command at a fire station. (*Id.* at 8). Plaintiff indicated that a fire station ideally consists of five people – a captain and four subordinate firefighters – on shift at a time. (*Id.* at 2-3; Doc. 26-2 at 2). However, he stated that, more often, the stations function with the minimum number of personnel – three people, including the captain. (Doc. 20-1 at 2-3). In his affidavit, CFD Chief Randy Parker stated that each fire station is staffed with between four and sixteen firefighters per shift, "although deviations in the number of firefighters may occur based on the scheduling needs of other fire stations." (Doc. 22 at 1-2). As a fire captain, Plaintiff worked 24-hour shifts approximately 9 days a month. (Doc. 20-1 at 4). Plaintiff conducted meetings with the shift crew once every 24 hours, met with his battalion chief once or twice in a 3-day rotation, and met with higher ranking chiefs approximately once per year. (*Id.* at 9-10).

CFD fire captains are "the fifth level of a six level firefighter series," and have supervisory responsibility over firefighters, senior firefighters, and lieutenants in their command. (Doc. 21-2 at 1). Defendant has classified fire captains as exempt under the FLSA. (Doc. 21-1 at 1). The "purpose classification" for fire captains, as defined by Defendant, is "to perform supervisory/emergency work functions associated with overseeing fire station operations on an assigned shift or at an assigned station, responding to fire/medical emergency calls, driving/operating fire apparatus, fighting/suppressing fires, and providing basic life support to sick/injured persons." (*Id.*). Defendant created an exhaustive, albeit non-exclusive, list of essential duties for

2

fire captains. (*Id.* at 1-4; Doc. 21-2 at 1-2). This list includes many management duties, such as supervising and evaluating staff, preparing and reviewing reports, conducting inspections, and leading trainings, as well as numerous emergency responder duties, such as responding to emergency calls, suppressing and controlling fires, and providing life support and assisting victims. (Doc. 21-1 at 1; *see also* Doc. 26-2 at 5-9). In his affidavit, Parker stated that a fire captain's primary duties consisted of:

> 1) supervising three (3) or more lower level firefighter staff; 2) prioritizing and assigning work; 3) conducting performance evaluations; 4) ensuring employees are trained; 5) making recommendations for disciplinary actions and terminations; 6) supervising fire suppression activities; 7) developing strategies; 8) supervising daily activities at the fire station; 9) maintaining records; 10) preparing and entering reports; and 11) ensuring that the equipment is ready to respond.

(Doc. 22 at 2). Parker testified that preventing, controlling and extinguishing fires, and rescuing victims were not Plaintiff's "primary dut[ies]," but conceded that those tasks were "part of his duty." (Doc. 26-2 at 5-8). Parker stated that, "[a]lthough Fire Captains do perform fire suppression activities and respond to other emergency activities, they spend more than fifty percent (50%) of their time performing the[] primary duties" listed above. (Doc. 22 at 2). Parker stated that a fire captain's duties at a fire scene included "direct[ing] the work of others, call[ing] for other agencies to respond, coordinat[ing] incoming responses, and manag[ing] the fire scene." (*Id.*). Parker indicated that, depending on the situation at a response scene, Plaintiff would "basically [be] in charge of [the fire] scene, to direct others and tell them what to do," and that Plaintiff exercised independent judgment and discretion with little to no supervision in fire response situations. (*Id.* at 2-3; Doc. 26-2 at 5-6, 8).

By contrast, Plaintiff testified that "probably about three percent" of his average day was spent on supervisory or management duties, and "then the rest of it is a team

3

effort." (Doc. 20-1 at 2, 16; Doc. 26-1 at 10). Plaintiff confirmed that his time was spent as follows: 30 percent "supervis[ing] firefighters that [we]re assigned to station/shift," including "supervising fire/rescue incidents;" 20 percent "prepar[ing], plan[ning], respond[ing], and mitigate[ing] emergencies ensuring life safety of CFD personnel and the public"; 25 percent "[t]raining others in the operation of the equipment, apparatus, principles and techniques involved in firefighting, medical treatment, and rescue"; 20 percent "[e]nsur[ing] a constant state of readiness by all crew members while on duty by observing employees physical and cognitive functional abilities"; and 5 percent "in other duties related to public relations, community involvement, responding to complaints, department memos, e-mails, special projects [and] . . . [i]mplementing administrative policies and procedures at the fire company operations level."[2] (Doc. 20-1 at 16-18, 26-28).

According to Plaintiff, his management duties included overseeing the maintenance staff, supply orders, scheduling days off for his subordinates, district reviews, and scheduling tours and community visits. (*Id.* at 2; Doc. 26-2 at 14). Plaintiff also indicated that he was responsible for numerous fire prevention activities, such as building walk-throughs and inspections, equipment maintenance, and community fire prevention lectures and fire drills. (*See* Doc. 20-1 at 2; Doc. 21-1 at 1-4; Doc. 26-1 at 5-6). Plaintiff engaged in fire suppression and firefighting duties and was responsible for supervising other officers at a fire scene "[u]ntil the battalion chief arrive[d.]" (Doc. 20-1 at 9). At fire scenes, Plaintiff spoke with citizens to find out if anyone was left inside and to ensure that everyone from a house or building was accounted for. (*Id.*).

---

[2] These percentages and descriptions were taken from Plaintiff's 2007 "Job Analysis Questionnaire"; Plaintiff confirmed in his deposition testimony that the percentages and descriptions were an accurate reflection of his duties as a fire captain. (Doc. 20-1 at 16-18, 21-28).

4

Plaintiff was not directly responsible for budgeting, but he could submit requests for items that needed to be replaced or purchased, which would be reviewed by administrative staff. (Doc. 26-1 at 9-10; Doc. 26-2 at 15-16). Parker confirmed that he was typically in charge of all hiring and firing decisions for the fire department, and that Plaintiff could make recommendations for employee hiring but was "not involved in very much of that." (Doc. 26-2 at 9-11). Plaintiff was responsible for verbal and written reprimands, as well as remedial training.[3] (*Id.* at 11-12; Doc. 26-1 at 7-8). However, if disciplinary problems rose above a certain level, those issues were referred to Parker for a determination as to termination. (Doc. 26-2 at 11-12). Plaintiff was responsible for conducting evaluations of his subordinates, but he was not directly involved in promotion decisions. (*Id.* at 18-19; Doc. 26-1 at 9). Plaintiff was not responsible for setting the rate of pay for his subordinates, as those determinations were made by the administrative staff for CFD. (Doc. 26-2 at 13-14). Although Plaintiff was responsible for scheduling shift work, but he did not have responsibility for setting the number of hours that each employee worked. (*Id.* at 14-15).

On October 12, 2010, prior to his retirement, Plaintiff initiated this action.[4] (Doc. 1). In his Amended Complaint, Plaintiff alleged that Defendant had violated the Fair Labor Standards Act ("FLSA") by (1) intentionally denying him overtime compensation for overtime that he had worked and (2) failing to keep appropriate

---

[3] According to Parker, verbal reprimands had to be signed by the battalion chief before they were placed in an employee's personnel file. (Doc. 26-2 at 11-12; Doc. 26-1 at 8).

[4] Plaintiff originally sought to bring his action on behalf of a collective class. (*See* Doc. 6). However, the parties' briefs indicate that Plaintiff is no longer seeking to certify this case as a collective action. (*See* Docs. 23, 26).

5

records as required by the FLSA. (Doc. 6). Defendant now seeks summary judgment. (*See* Doc. 20).

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

6

Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; rather, there must be evidence from which a finder of fact could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. FLSA Overtime Claim

The FLSA is a remedial statute which requires employers to pay employees time-and-a-half for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009). However, the FLSA provides for an exemption to the overtime requirement for those individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "The applicability of an FLSA exemption is an affirmative defense that an employer must establish by a preponderance of the evidence." *Baden-Winterwood*, 566 F.3d at 627. The exemptions to the FLSA's overtime provisions are "to be narrowly construed against the employers . . . and the

7

employer bears not only the burden of proof, but also the burden on each element of the claimed exemption." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (internal quotations and citations omitted).

Under the current regulations, an employee qualifies as a bona fide executive if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is management of the enterprise in which [she] is employed or of a customarily recognized department or subdivision thereof"; (3) he "customarily and regularly directs the work of two or more other employees"; and (4) he "has the authority to hire or fire other employees," or his "suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

An employee falls under the administrative exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

"'Primary duty' does not mean the most time-consuming duty; it instead connotes the 'principal' or 'chief'-meaning the most important-duty performed by the employee." *Thomas v Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007); *see also* 29 C.F.R. § 541.700(a). The determination of an employee's primary duty under either of these exemptions is a factual question that "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *See* 29 C.F.R. § 541.700(a); *Maestas v. Day & Zimmerman, LLC*, 664

8

F.3d 822, 829 (10th Cir. 2012). Relevant factors include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Generally, an employee satisfies the primary duty requirement if he spends more than 50 percent of his time performing exempt work. 29 C.F.R. § 541.700(b). "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

In 2004, the United States Department of Labor enacted additional regulations regarding the scope of the executive and administrative exemptions, including the so-called "first responder regulation." *See Mullins v. City of New York*, 653 F.3d 104, 107 (2d Cir. 2011). 29 C.F.R. § 541.3 provides that such exemptions

> do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, *fire fighters*, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as *preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law;* performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. 541.3(b)(1) (emphasis added).

9

The regulatory preamble to these 2004 revisions noted that many federal courts have found that "high-level police and fire officials" were exempt only if the employee's primary duty was performing managerial tasks such as:

> evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; making recommendations as to hiring, promotion, discipline or termination; coordinating and implementing training programs; maintaining company payroll and personnel records; handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation; preparing budgets and controlling expenditures; ensuring operational readiness through supervision and inspection of personnel, equipment and quarters; deciding how and where to allocate personnel; managing the distribution of equipment; maintaining inventory of property and supplies; and directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed.

69 Fed. Reg. 22122-01, 22130 (Apr. 23, 2004) (collecting cases). The preamble expressly addressed the reasons for the enactment of the first responder regulation:

> The current regulations do not explicitly address the exempt status of police officers, fire fighters, paramedics or EMTs.[5] This silence in the current regulations has resulted in significant federal court litigation to determine whether such employees meet the requirements for exemption as executive, administrative or professional employees. Most of the courts facing this issue have held that police officers, fire fighters, paramedics and EMTs and similar employees are not exempt because they usually cannot meet the requirements for exemption as executive or administrative employees. . . . The [DOL] has no intention of departing from this established case law. Rather, for the first time, the [DOL] intends to make clear in these revisions . . . that such police officers, fire fighters, paramedics, EMTS and other first responders are entitled to overtime pay. *Police sergeants, for example, are entitled to overtime pay even if they direct the work of other police officers because their primary*

---

[5] An employee engaged in "fire protection activities" is defined as "a firefighter . . . who--(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk." 29 C.F.R. § 553.210(a). Not included in this category "are the so-called 'civilian' employees of a fire department . . . who engage in such support activities as those performed by dispatchers, alarm operators, apparatus and equipment repair and maintenance workers, camp cooks, clerks, stenographers, etc." 29 C.F.R. § 553.210(b).

10

> *duty is not management or directly related to management or general business operations. . . .*

69 Fed. Reg. at 22129 (emphasis original).

In a recent case, the United States Court of Appeals for the Second Circuit held that the DOL did not eliminate the primary duties test in interpreting the first responder regulation.[6] *See Mullins*, 653 F.3d at 116. In *Mullins*, the Second Circuit found that the Secretary of the DOL's interpretation of the first responder regulation was entitled to controlling deference, and thus adopted the view that, rather than replacing the primary duties test, the first responder regulation applies in conjunction with the primary duties test. *See id.* at 114-17. In adopting the Secretary's rationale, the Second Circuit concluded that courts must consider whether the management and supervisory activities performed by the categories of employees listed in § 541.3(b) are undertaken as a part of the employees' primary field law enforcement duties. *Id.* at 116.

Thus, the Second Circuit held that, when an employee's management activities are tied to primary field first responder duties, the employee's supervision should not be deemed management; however, when management tasks are "performed by high-level personnel who typically d[o] not engage in any front-line activities," those duties would still be considered management. *See id.*; *see also Maestas*, 664 F.3d at 827 ("The first responder regulation does not alter the primary duty test. Thus, high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial[.]") (internal citations omitted); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 WL 2598345, at * 4-5 (E.D. Ky. June 25, 2008) ("[C]ertain first-responder officers can be

---

[6] To date, the United States Court of Appeals for the Sixth Circuit has neither interpreted nor addressed the application of the first responder regulation.

11

exempt under the new regulations. . . . [T]he analysis of whether an employee's primary duty is management is key in determining whether the 'first responder' regulation will apply.").[7] The regulatory language supports this interpretation. *See* 29 C.F.R. § 541.3(b)(2)-(3) ("Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise . . . . [Nor do such employees] qualify as exempt administrative employees because their primary duty is not the performance of work directed related to the management or general business operations of the employer[.]").

In its Motion for Summary Judgment, Defendant argues that: (1) Plaintiff is subject to the executive exemption because his primary duties are the management, supervision, and training of the employees under his command, and because he has hiring, firing, and disciplinary authority; (2) Plaintiff is subject to the administrative exemption because his primary duties are related to the general business operations of the fire station and because he exercises discretion and independent judgment as to daily operations, emergency situations, and staffing decisions; (3) Plaintiff is nonetheless exempt from overtime based on his combination of exempt duties under the executive and administrative exemption standards; and (4) Plaintiff is not a first responder under § 541.3(b) because Plaintiff's "primary duty [wa]s not controlling or extinguishing fires". (Doc. 23 at 8-22). In response, Plaintiff argues that he is a non-

---

[7] In its memorandum supporting its Motion for Summary Judgment, Defendant states that the Eastern District of Kentucky held in *Crawford* "that plaintiffs [who were Lieutenants and Captains with the Department of Corrections] were exempt from overtime compensation." (Doc. 23 at 20-21). However, Defendant grossly mischaracterizes the holding of the *Crawford* decision. The *Crawford* court found that the first responder regulation did not preclude the plaintiffs from being exempt under the executive or administrative exemptions to the FLSA. 2008 WL 2598345, at *6. The court did not, however, make a finding regarding the plaintiffs' exempt status in *Crawford*; instead, the Court found that "genuine issues of material fact preclude[d] a finding as a matter of law as to whether [plaintiffs were] first responders," and that factual findings regarding the nature of the plaintiffs duties were required before the court could determine, as a matter of law, whether plaintiffs were exempt "based on the first responder regulation and the FLSA exemptions." *Id.* (internal quotations and citations omitted).

12

exempt first responder under § 541.3(b), and that his "primary duty was neither management nor the performance of office or non-manual work[.]" (Doc. 26 at 10). Accordingly, Plaintiff argues that genuine issues of material fact preclude summary judgment as to whether Plaintiff can be classified as exempt under either the administrative or executive exemptions and as to whether Plaintiff is a non-exempt first responder under § 541.3(b). (*Id.* at 4-10).

While it does not appear, based on the evidence and arguments before the Court, that the parties disagree as to the myriad of tasks that Plaintiff performed as a fire captain, there is some disagreement as to what percentage of time Plaintiff spent performing his various tasks. The parties also staunchly disagree as to which of Plaintiff's duties were "primary"; Defendant maintains that Plaintiff's primary duty was management, while Plaintiff contends that his primary duty was engaging in fire protection activities. After reviewing the evidence and arguments, the Court finds that, when drawing all reasonable inferences in favor of Plaintiff, Defendant has failed to establish that it is entitled to summary judgment.

The evidence demonstrates that Plaintiff's duties included both managerial duties and first responder duties; however, the question of what duty was "primary" must be answered to determine (1) whether Plaintiff is non-exempt under the first responder regulation, and if not, (2) whether Plaintiff is exempt under the administrative or executive exemptions. Defendant's primary argument is that Plaintiff spent more than 50 percent of his time engaging in management-type duties, such as supervising employees, conducting trainings and evaluations, and preparing performance evaluations and disciplinary actions. (*See* Doc. 23 at 3-5, 11-14, 16-18, 22). Even assuming that Defendant is correct about Plaintiff's percentage of management duties,

the percentage of time spent on exempt work is not dispositive in the primary duty analysis if other factors support the conclusion that Plaintiff is non-exempt. *See* 29 C.F.R. § 541.700(b).

The primary duty determination is instead a factual question "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Here, Plaintiff points to the evidence in the record that: (1) he primarily worked as part of a team responsible for preventing and suppressing fires and assisting fire victims; (2) some of the managerial and supervisory duties that he performed were directly related to his first responder duties; and (3) he did not perform a number of functions that would normally indicate that his primary duty was managerial or operational. (*See* Doc. 26 at 2-5, 8-10). By contrast, Defendant directs the Court to evidence that Plaintiff was primarily engaged in reporting and employee supervision duties. (*See* Doc. 23 at 3-5, 11-12, 16, 22). At this stage, the Court may not weigh the evidence, judge the credibility of any witness, or resolve any factual dispute; instead, all facts and reasonable inferences must be viewed in the light most favorable to Plaintiff. *See Anderson*, 477 U.S. at 249; *Matsushita*, 475 U.S. at 587. The parties have identified fundamental factual disputes as to the overall character of Plaintiff's job as a fire captain at CFD and as to a number of the factors relevant to the primary duty analysis. *See* 29 C.F.R. § 541.700(a). The Court accordingly finds that genuine issues of material fact preclude the Court from finding as a matter of law that Plaintiff is a either a non-exempt first responder or that Plaintiff is an exempt employee under the FLSA. Plaintiff's status under both § 541.3(b) and § 213(a)(1) turns on the factual question of his primary duty; because this question must be resolved by the fact finder, Defendant is not entitled to summary judgment.

Accordingly, Defendant's Motion for Summary Judgment will be **DENIED** as to Plaintiff's FLSA overtime claim.

### B. FLSA Recordkeeping Claim

Plaintiff's Amended Complaint also included a claim that Defendant had failed to keep appropriate records as required by the FLSA. (Doc. 6 at 4). In its Motion for Summary Judgment, Defendant argued that Plaintiff was not entitled to bring a private cause of action under the FLSA's recordkeeping requirements. (Doc. 23 at 22-23). In his response, Plaintiff did not address this claim. The Court agrees with other courts that have held that a party may abandon claims by failing to address or support them in a response to a motion for summary judgment. *See, e.g.*, *Clark v. City of Dublin, Oh.*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (finding that, when a plaintiff did not properly respond to arguments asserted by a defendant's motion for summary judgment as to two claims, "the District Court did not err when it found that the Appellant abandoned [those] claims"); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19 (6th Cir. 2003) (finding that the plaintiffs had abandoned their claim "[b]ecause [they] failed to brief the issue before the district court"); *Anglers of the Au Sable v. United States Forest Svc.*, 565 F. Supp. 2d. 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment."); *see also Morris v. City of Memphis*, 2012 WL 3727149, at *2 (W.D. Tenn. Aug. 27, 2012) (collecting cases). The Court will thus deem Plaintiff's recordkeeping claim abandoned, and Defendant's Motion for Summary Judgment will be **GRANTED** with respect to that claim.

Case 1:10-cv-00280   Document 29   Filed 11/07/12   Page 15 of 16   PageID #: 371

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 20) will be **DENIED IN PART** as to Plaintiff's FLSA overtime claim and **GRANTED IN PART** as to Plaintiff's FLSA recordkeeping claim.

**SO ORDERED** this 7th day of November, 2012.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE