UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| RONALD BARROWS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:10-cv-280 |
| v. ) | |
| ) | Judge Mattice |
| CITY OF CHATTANOOGA, TENNESSEE, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## MEMORANDUM OPINION

This matter proceeded to a bench trial before the undersigned in Chattanooga, Tennessee on December 11, 2012. Based on the following findings of fact and conclusions of law, declaratory judgment will be entered in favor of Plaintiff. However, because Plaintiff has not met his burden of proof as to damages, Plaintiff's recovery will be limited to reasonable attorney's fees and the costs of this action.

### I. FINDINGS OF FACT

Based on the testimony and evidence presented at trial, the Court hereby makes the following findings of fact:

Plaintiff worked for the City of Chattanooga Fire Department ("CFD") starting in 1985. In 2002, he was promoted to the position of fire captain, and he worked in that position until his retirement in 2012. As a fire captain, Plaintiff received an annual salary of $61,132.00.

CFD's approximately 75 fire captains are "the fifth level of a six level firefighter series."[1] The "purpose classification" for fire captains, as defined by Defendant, is "to perform supervisory/emergency work functions associated with overseeing fire station operations on an assigned shift or at an assigned station, responding to fire/medical emergency calls, driving/operating fire apparatus, fighting/suppressing fires, and providing basic life support to sick/injured persons."[2] CFD's fire captains report directly to one of approximately fourteen battalion chiefs, who each oversee a "district" of five to eight fire stations. Each station house generally has two fire trucks (also referred to as "apparatuses" and pieces of "equipment"), each of which is staffed with a team consisting of a fire captain and four lower-level firefighters, including lieutenants, senior firefighters, and privates. Although fire captains oversee the work of these subordinate firefighters, Plaintiff and his subordinates interacted as a team and did most everything together during the course of a shift.

As a fire captain, Plaintiff generally worked 24-hour shifts 9 days per month. On occasion, captains are subject to "holdovers" – that is, if the captain is responding to or is actively involved in a call when his shift is scheduled to end, he may end up working additional minutes or hours past his shift time until his relief shows up or until he can complete his reporting responsibilities for the incident at the fire house. Plaintiff was sometimes held over for these and other emergency situations. His "best estimate" is that, in the three years prior to his retirement, he worked approximately 90 minutes

---

[1] The testimony provided at trial demonstrates that almost all of the 75 fire captains were assigned to, and worked directly in, a firefighting division; approximately 5 of those captains assumed purely administrative roles.

[2] In 2010, the City changed a previous ordinance that had made fire captains non-exempt under the FLSA in order to reclassify fire captains as FLSA-exempt employees. All affected employees were sent a letter regarding the change in August 2010; however, the employees were not afforded any process to appeal or otherwise protest this change in designation.

over his shift time "maybe" two times per month; however, the number and length of holdovers varied and "[s]ometimes it wouldn't happen at all." Plaintiff conceded that he has no records or overtime requests to support these estimations. Plaintiff also admitted on cross-examination that he had given deposition testimony in June 2012 stating that he had been held over only twice during the 2012 calendar year and conceded that this deposition testimony was inconsistent with his trial testimony as to his estimation of holdover hours.

Defendant created an exhaustive, albeit non-exclusive, list of essential duties for fire captains.[3] This list includes many management duties, such as supervising and evaluating staff, preparing and reviewing reports, conducting inspections, and leading trainings, as well as numerous emergency or "first responder" duties, such as responding to emergency calls, suppressing and controlling fires, providing life support, and assisting victims. Plaintiff and his team were assigned to a "rescue" apparatus, which, in addition to water tanks, hoses, and pumps, has large-scale electrical equipment, high-angle rescue equipment, and medical equipment for first responder calls. Plaintiff and all of the other firefighters assigned to this apparatus were required to be certified to work this specific apparatus and all of its' specialized equipment.

In 2007, Plaintiff completed a Job Analysis Questionnaire ("JAQ") wherein he reported that his overall time was spent as follows: 30 percent "supervis[ing] firefighters that [we]re assigned to station/shift," including "supervising fire/rescue incidents;" 20 percent "prepar[ing], plan[ning], respond[ing], and mitigate[ing] emergencies ensuring life safety of CFD personnel and the public"; 25 percent "[t]raining others in the operation of the equipment, apparatus, principles and techniques involved in

---

[3] At trial, the parties did not disagree as to the actual duties performed by fire captains. Instead, the parties dispute centers around the legal question of which duties are "primary."

firefighting, medical treatment, and rescue"; 20 percent "[e]nsur[ing] a constant state of readiness by all crew members while on duty by observing employees['] physical and cognitive functional abilities"; and 5 percent "in other duties related to public relations, community involvement, responding to complaints, department memos, e-mails, special projects [and] . . . [i]mplementing administrative policies and procedures at the fire company operations level." Plaintiff testified that these answers were true, but expressed that his belief at the time he was completing the JAQ was that there was some benefit to making himself sound more important. Plaintiff stated that his average day consisted of performing his supervisory and management duties for 20 to 30 percent of the time, and the majority of those managerial duties related to his first responder duties, such as fire suppression and team readiness.

The number of fire response calls that an apparatus receives varies greatly depending on the day, with sometimes as many as 12 calls coming in a single 24-hour shift; there are very few days on which an apparatus received no calls. On average, fire captains and their subordinates spend more time at the fire station than out fighting fires, as the nature of their job requires them to wait until calls come in. When an apparatus is dispatched to a fire scene, the captains ride on the apparatus with, and are in direct control of, the other members of the apparatus team, and are responsible for advising the dispatcher of the status of the scene and the need for additional trucks and manpower, as well as for generally overseeing the scene and coordinating and participating in "interior attacks" and rescues. Plaintiff "typically" participated in interior attacks and rescues alongside his team members.

In addition to fire calls, an apparatus team receives a number of other first-responder-type calls, such as calls for emergency medical services and response.

4

Although the amount of time spent on such activities varies depending on the needs of any given shift, the biggest focus of the department is on these first-responder duties.

If two captains are present at a response scene, or if the battalion chief arrives on a scene, a fire captain will often have to relinquish his control of the scene to his battalion chief or the other captain; in such instances, the captain, while still overseeing his team, then works solely on fire control, suppression, and rescue with his team members. The battalion chief generally comes to every major call in a pickup truck with no firefighting capabilities and takes over control of the scene from the captain approximately 90 percent of the time.

Fire captains are also responsible for: ensuring that all subordinate firefighters are on duty; doing basic paperwork and preparing incident reports after calls; checking supplies at the fire station; conducting formal and informal training sessions for the firefighters on duty; and engaging in community fire prevention activities (such as building walk-throughs). Although the captains are responsible for scheduling shifts for their subordinates, they do not set the rate of pay for their subordinates nor do they set the number of hours an employee will work. Fire captains are also not responsible for hiring, firing, promotions or major disciplinary action.[4] Captains can talk to their subordinates about performance or disciplinary issues and, at their discretion, may write a letter to submit to the battalion chief stating that the captain believed that a rule had been violated; however, captains cannot recommend specific disciplinary action.[5] Fire captains are also not involved in budgeting preparation or decisions for their

---

[4] Fire Chief Randy Parker testified at trial that, as to hiring and promotion decisions, CFD follows specific selection and testing processes. In fact, he conceded that captains could do little more than simply make a call to say "hey, this guy is a good guy."

[5] For instance, captains are authorized to send an employee home, but they are required to immediately notify their chain of command to schedule a hearing for the employee.

5

stations; instead, captains can complete a "wish list" of items for the firehouse for the administration's review during the budgeting process.

## II. CONCLUSIONS OF LAW

### A. Liability

The FLSA is a remedial statute which requires employers to provide employees with compensation for overtime hours worked. 29 U.S.C. § 207(a)(1); *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009). However, the FLSA provides for an exemption to the overtime requirement for those individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "The applicability of an FLSA exemption is an affirmative defense that an employer must establish by a preponderance of the evidence." *Baden-Winterwood*, 566 F.3d at 627. The exemptions to the FLSA's overtime provisions are "to be narrowly construed against the employers . . . and the employer bears not only the burden of proof, but also the burden on each element of the claimed exemption." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (internal quotations and citations omitted); *see also A.H. Phillips Inc. v Walling*, 324 U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.").

Under the current regulations, an employee qualifies as a bona fide executive if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is management of the enterprise in which [she] is employed or of a customarily recognized department or subdivision thereof"; (3) he "customarily and regularly directs the work of two or more other employees"; and (4) he "has the authority to hire or fire other employees," or his "suggestions and recommendations as

6

Case 1:10-cv-00280-HSM-WBC   Document 44   Filed 05/06/13   Page 6 of 17   PageID #: 1002

to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

An employee falls under the administrative exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

"'Primary duty' does not mean the most time-consuming duty; it instead connotes the 'principal' or 'chief'-meaning the most important-duty performed by the employee." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007); *see also* 29 C.F.R. § 541.700(a). The determination of an employee's primary duty under either of these exemptions is a factual question that "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *See* 29 C.F.R. § 541.700(a); 29 C.F.R. § 541.3(b)(2) (providing, as an example, that a firefighter "whose primary duty is to investigate crimes or fight fires is not exempt . . . merely because [he] also directs the work of other employees in the conduct of an investigation or fighting a fire."); *see also Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012). Relevant factors include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Generally, an employee satisfies the primary duty requirement if he

7

spends more than 50 percent of his time performing exempt work. 29 C.F.R. § 541.700(b). However, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

In 2004, the United States Department of Labor enacted additional regulations regarding the scope of the executive and administrative exemptions, including the so-called "first responder regulation." *See Mullins v. City of New York*, 653 F.3d 104, 107 (2d Cir. 2011). 29 C.F.R. § 541.3 provides that such exemptions

> do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, *fire fighters*, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as *preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law;* performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. 541.3(b)(1) (emphasis added).

The regulatory preamble to these 2004 revisions noted that many federal courts have found that "high-level police and fire officials" were exempt only if their primary duties were performing managerial tasks such as:

> evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; making recommendations as to hiring, promotion, discipline or termination; coordinating and implementing training programs; maintaining company payroll and personnel records; handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation; preparing budgets and controlling expenditures; ensuring operational readiness through supervision and inspection of personnel, equipment and quarters; deciding how and where to allocate

8

personnel; managing the distribution of equipment; maintaining inventory of property and supplies; and directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed.

69 Fed. Reg. 22122-01, 22130 (Apr. 23, 2004) (collecting cases). The preamble expressly addressed the reasons for the enactment of the first responder regulation:

> The current regulations do not explicitly address the exempt status of police officers, fire fighters, paramedics or EMTs.[6] This silence in the current regulations has resulted in significant federal court litigation to determine whether such employees meet the requirements for exemption as executive, administrative or professional employees. Most of the courts facing this issue have held that police officers, fire fighters, paramedics and EMTs and similar employees are not exempt because they usually cannot meet the requirements for exemption as executive or administrative employees. . . . The [DOL] has no intention of departing from this established case law. Rather, for the first time, the [DOL] intends to make clear in these revisions . . . that such police officers, fire fighters, paramedics, EMTS and other first responders are entitled to overtime pay. *Police sergeants, for example, are entitled to overtime pay even if they direct the work of other police officers because their primary duty is not management or directly related to management or general business operations.* . . .

69 Fed. Reg. at 22129 (emphasis original).

In a recent case, the United States Court of Appeals for the Second Circuit held that the DOL did not eliminate the primary duties test in interpreting the first responder regulation.[7] *See Mullins*, 653 F.3d at 116. In *Mullins*, the Second Circuit found that the Secretary of the DOL's interpretation of the first responder regulation was entitled to

---

[6] An employee engaged in "fire protection activities" is defined as "a firefighter . . . who--(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk." 29 C.F.R. § 553.210(a). Not included in this category "are the so-called 'civilian' employees of a fire department . . . who engage in such support activities as those performed by dispatchers, alarm operators, apparatus and equipment repair and maintenance workers, camp cooks, clerks, stenographers, etc." 29 C.F.R. § 553.210(b).

[7] To date, the United States Court of Appeals for the Sixth Circuit has neither interpreted nor addressed the application of the first responder regulation.

controlling deference, and thus adopted the view that, rather than replacing the primary duties test, the first responder regulation applies in conjunction with the primary duties test. *See id.* at 114-17. In adopting the Secretary's rationale, the Second Circuit concluded that courts must consider whether the management and supervisory activities performed by the categories of employees listed in § 541.3(b) are undertaken as a part of the employees' primary field law enforcement duties. *Id.* at 116.

Thus, the Second Circuit held that, when an employee's management activities are tied to primary field first responder duties, the employee's supervision should not be deemed management; however, when management tasks are "performed by high-level personnel who typically d[o] not engage in any front-line activities," those duties would still be considered management. *See id.*; *see also Maestas*, 664 F.3d at 827 ("The first responder regulation does not alter the primary duty test. Thus, high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial[.]") (internal citations omitted); *Watkins v. City of Montgomery*, --- F. Supp. 2d ----, 2013 WL 324025, at *8 (M.D. Ala. Jan. 29, 2013) ("[T]he percentage of time spent on exempt duties does not decide the primary duty question if the other relevant factors – such as the employee's relative freedom from supervision and the relative importance of the exempt duties in relations [sic] to the non-exempt duties – supports the conclusions that Plaintiffs are first responders."); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 WL 2598345, at * 4-5 (E.D. Ky. June 25, 2008) ("[C]ertain first-responder officers can be exempt under the new regulations. . . . [T]he analysis of whether an employee's primary duty is management is key in determining whether the 'first responder' regulation will apply."). The regulatory language itself supports this

10

interpretation. *See* 29 C.F.R. § 541.3(b)(2)-(3) ("Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise . . . . [Nor do such employees] qualify as exempt administrative employees because their primary duty is not the performance of work directed related to the management or general business operations of the employer[.]").

Based on the above findings of fact, the Court concludes that Plaintiff's primary duty was as a firefighter preventing, controlling, and extinguishing fires, rescuing fire victims, conducting inspections for violations of law, and preparing investigative reports. Defendant's argument that Plaintiff's primary duties were managerial is unpersuasive. First, Defendant argues that Plaintiff's primary duty at a fire response scene was to manage his team; however, the first responder regulation specifically states that an individual who directs the work of other employees at a fire scene will not automatically be transformed into a manager. *See* 29 C.F.R. § 541.3(b)(2).

Next, the relevant factors of the primary duties test, when analyzed under the facts of this case, also weigh against a finding that Plaintiff's primary duties were managerial. Plaintiff was not free from direct supervision; instead, he answered directly to the battalion chief. The battalion chief frequently relieved Plaintiff of command at response scenes. Plaintiff did not have authority to formally discipline his employees, but rather, had to report infractions to the battalion chief for disciplinary action. Even informal disciplinary action taken by Plaintiff was to be reported immediately to the battalion chief. Plaintiff also had no control over budgeting, hiring, firing, promotions, rates of pay, or number of hours worked by his subordinates. All of these duties were instead in the sole control of the fire chief or Plaintiff's other higher-ups.

11

Case 1:10-cv-00280-HSM-WBC   Document 44   Filed 05/06/13   Page 11 of 17   PageID #: 1007

The basic managerial duties that were performed by Plaintiff – such as basic scheduling of hours and preparing administrative reports – did not involve management and general operations of the entire CFD enterprise. These duties were mainly ministerial in nature and took up only 20 to 30 percent of Plaintiff's time on an average day. The remainder of Plaintiff's managerial duties – such as conducting training sessions, performing building walk-throughs, and assuring a constant state of preparedness – related directly to his regular front line firefighting duties. *See Mullins*, 653 F.3d at 116.

Plaintiff's credible trial testimony demonstrated that he actively worked as the lead member of a five-man team responsible for responding to emergency fire and medical calls. Plaintiff, along with all of his team members, was tasked with the responsibility for knowing every aspect of the operations of the rescue apparatus to which he was assigned and each specialized piece of equipment thereon. Plaintiff, along with all of his team members, rode on that apparatus in response to every fire or medical call received during his shifts. Plaintiff was actively involved in interior attacks of fires and victim rescues at most response scenes.

The fact that Plaintiff's direct firefighting duties did not constitute the largest percentage of his time does not detract in any way from the fact that Plaintiff's primary duty was as a firefighter. The nature of Plaintiff's job, as is the nature of the job of every front-line fire fighter, is generally to wait. Any given day for a fire fighter may consist of extended periods of boredom, punctuated by periods of urgency and moments of terror. Plaintiff's credible testimony demonstrates that he spent an equivalent amount of time engaged in firefighting duties on any given shift as his subordinates. Simply put, Plaintiff and his subordinates were tasked with the responsibility of interrupting

whatever other task or activity they may have been involved in to respond to a fire or emergency call. Thus, although Plaintiff's firefighting duties may not have been his most time-consuming, they were clearly the most important duties that he performed, and accordingly, those duties were Plaintiff's "primary" duties.

Based on the Court's finding that Plaintiff's primary duties were firefighting and emergency rescue, rather than management, the Court must also find that Plaintiff is subject to the first responder regulation. Accordingly, the Court finds that Defendant has failed to establish by a preponderance of the evidence that Plaintiff is subject to either the administrative or bona fide executive exemption (or some combination thereof). Plaintiff's request for declaratory relief will thus be entered, as the Court hereby finds that Plaintiff was improperly classified as an FLSA-exempt employee.

### B. Damages

#### 1. Overtime Compensation

Because the Court has found that Plaintiff was not exempt from the FLSA's overtime requirements, the Court must now determine what, if any, damages Plaintiff is entitled to recover.

The FLSA plaintiff bears the burden of proving, by a preponderance of evidence, that he "performed work for which he . . . was not properly compensated."[8] *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). The FLSA plaintiff may be able to

---

[8] Plaintiff argues that Defendant failed to establish at trial that he was subject to a "7(k) exemption." Section 207(k) of the FLSA allows public agencies engaged in fire protection or law enforcement activities to define a "work period" of between 7 and 28 days, which will govern the agency's overtime requirements in lieu of the standard 40-hour work-week defined by § 207(a)(1). 29 U.S.C. § 207(a)(1), (k)(1)-(2). The Court hereby finds that Defendant has proven that it properly adopted and utilized a 204-hour, 27-day work period under § 207(k). *See Brock v. City of Cincinnati*, 236 F.3d 793, 810 (6th Cir. 2001). However, the Court notes that, even if Defendant had not established a § 7(k) work period, Plaintiff would not be entitled to recovery for overtime compensation based on a 40-hour work-week for the same reasons described in detail below.

13

prove such damages "through discovery and analysis of the employer's code-mandated records." *Id*. If, however, the employer did not keep accurate or adequate records, "the plaintiff's burden of proof is relaxed," and he may satisfy this reduced burden by offering proof "that he has in fact performed work for which he was improperly compensated and [by producing] sufficient evidence to show the amount and extent of that work as a just and reasonable inference." *Id*; *Anderson*, 328 U.S. at 687-88. If the plaintiff is able to do so, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 326 U.S. at 387-88.

In this case, even giving Plaintiff the benefit of the doubt that Defendant's work records were inadequate or inaccurate, thus lowering Plaintiff's burden of proof, the Court nonetheless finds that Plaintiff has not met his burden of proving damages. At trial, Plaintiff testified that his "best estimate" was that he worked approximately 90 minutes over his shift time "maybe" two times per month, but he conceded that the number and length of holdovers varied and that "[s]ometimes it wouldn't happen at all." Indeed, Plaintiff admitted that in prior testimony, he stated that he was only held over his shift time twice in the first half of the 2012 calendar year.

Plaintiff's testimony suffers from several fatal flaws: (1) it is at least partially inconsistent with Plaintiff's prior sworn testimony regarding shift holdovers; (2) it chiefly consists of vague speculations and conjectures by Plaintiff as to the number and length of the holdovers that Plaintiff worked; and (3) it speaks only to his holdover time for a given shift, and not to the overtime that Plaintiff worked in a given 40-hour work week or 27-day work period.

14

The last flaw is also crucial to the Court's finding that Plaintiff has not met his burden of proof. Plaintiff's testimony was that he was held over on a given shift approximately two times per month. However, Plaintiff's holdovers on a given shift are entirely irrelevant to the FLSA damages analysis unless that holdover caused Plaintiff not only to eclipse his shift time, but also his 40-hour work week or 204-hour, 27-day work period. Plaintiff's testimony is thus insufficient to establish that he performed work for which he was improperly compensated.

However, even assuming Plaintiff's testimony had established that he was not properly compensated for overtime hours, the Court still does not believe that Plaintiff's testimony established the amount and extent of that work as a just and reasonable inference. Plaintiff provided rough estimates regarding the number and length of his holdovers, conceding that these figures varied and that, in some months, he was not held over at all. Based on his "estimations," Plaintiff asks for compensation for approximately 60 hours of overtime per year for three years. Yet Plaintiff readily conceded that, in prior deposition testimony, he testified that for the six-month period preceding that deposition, he had been held over only twice.

The Court is troubled by Plaintiff's admittedly inconsistent testimony. Based on Plaintiff's "estimations" regarding the average length of his holdovers, Plaintiff testified at his deposition that he worked only 3 hours of overtime during the first 6 months of 2012; nonetheless, at trial, Plaintiff asks the Court to accept testimony indicating that he is entitled to 30 hours of overtime compensation for that same period. Based on these uncontested inconsistencies, the Court finds that Plaintiff's testimony regarding the amount and extent of his overtime was not credible. *See, e.g.*, *Bayken v. United States*, 272 F.2d 186 (6th Cir. 1959) ("The question of credibility is one for the determination of

15

the trier of facts. . . . [D]ue regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."). The Court thus finds that Plaintiff has not met even the reduced burden of proof regarding damages for overtime compensation. *See Myers*, 192 F.3d at 551; *Anderson*, 328 U.S. at 687-88. Accordingly, Plaintiff cannot prevail on his claim for overtime compensation, and he is not entitled to damages pursuant to 29 U.S.C. § 207.[9]

### 2. Attorney's Fees and Costs

Section 216 of the FLSA provides, in relevant part, that the Court shall allow a prevailing employee to recover his reasonable attorney's fees, as well as the costs of the action. 29 U.S.C. § 216(b). Defendant has conceded that Plaintiff is entitled to attorney's fees and costs in the event that he prevails in this action. Although the Court has found that Plaintiff is not entitled to damages for overtime compensation, Plaintiff has prevailed as to his claim for declaratory relief. Judgment for a plaintiff on a claim for declaratory relief will "usually" be satisfactory for finding that the plaintiff has prevailed in order to recover attorney's fees. *See, e.g.*, *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012); *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 671 n.2 (6th Cir. 2006) ("[A]ll that is required to obtain prevailing party status is a judgment that is enforceable and on the merits.").

Because Plaintiff here has prevailed on his claim for declaratory relief on the merits, the Court finds that he is a prevailing party; accordingly, he is entitled to recovery of reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. §

---

[9] The Court notes that, based on its holding that Plaintiff failed to meet his burden of proof regarding damages, it need not address whether Defendant satisfied the burden-shifting requirements under *Anderson*, whether the two or three year FLSA look-back date applies, or whether Plaintiff is entitled to liquidated damages.

16

216(b). Plaintiff **SHALL** file an itemized schedule of fees and costs, supported by a sworn affidavit, **no later than 30 days** from the date of this Order.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has failed to meet its burden of proof as to its affirmative defense – that is, that Plaintiff was subject to an exemption from the FLSA's overtime provisions. Judgment will enter in favor of Plaintiff as to his claim for declaratory relief. However, Plaintiff has failed to meet his burden of proof as to the amount of damages that he is due for his alleged uncompensated overtime. Accordingly, Plaintiff is not entitled to judgment for his claim for overtime compensation. Thus, Plaintiff's award for damages is limited to his reasonable attorney's fees and costs. Plaintiff shall file an itemized schedule of fees and costs within 30 days from the date of this Order.

Once judgment has been entered, the Clerk of Court is **ORDERED** to **CLOSE** this case.

**SO ORDERED** this 6th day of May, 2013.

                                          */s/ Harry S. Mattice, Jr.*
                                          HARRY S. MATTICE, JR.
                                          UNITED STATES DISTRICT JUDGE